UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CLARENCE BRITTEN, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 25-1132 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS *et al.*, ) | |
|     Defendants. ) | |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Clarence Britten, an inmate at Dixon Correctional Center. Plaintiff also filed a Motion for Status (Doc. 9).

**I.    Background**

In January 2024, Plaintiff filed a Complaint in *Britten v. Illinois Department of Corrections*, case No. 24-1047 (C.D. Ill) (Doc. 1). *See White v. Keely*, 814 F.3d 883, 886 (7th Cir. 2016) (stating that courts "may take judicial notice of public records, including public court documents"). After the Court dismissed Plaintiff's initial and amended pleadings because they were illegible, the Court granted Plaintiff an extension to file a second amended pleading, which Plaintiff accomplished. (*Id.* at Doc. 9.) Before the Court screened Plaintiff's second amended pleading, Plaintiff filed a Motion for Leave to file a Third Amended Complaint. (*Id.* at Doc. 23.)

Although the Court granted Plaintiff's Motion for Leave to File a Third Amended Complaint, the Court dismissed the amended pleading, citing numerous deficiencies, which included the continued inability to read his claims asserted against seventeen officials and entities that Plaintiff alleges violated their duty under the Eighth Amendment, Americans with Disabilities Act, and Rehabilitation Act. The Court also noted that although Plaintiff stated he is a seriously mentally ill inmate who had not received adequate mental health care, he did not disclose any facts to support his conclusory assertion. In this regard, Plaintiff neither claimed he experienced the numerous deficiencies listed nor identified who was personally involved in the alleged deprivation. Despite the Court's dismissal, the Court granted Plaintiff additional time to file a fourth amended complaint, in accordance with the Court's instructions. (*Id*. at Doc. 27 at 3-4, 6.) In April 2024, the Court dismissed Plaintiff's case without prejudice for his failure to file a fourth amended pleading.

In July 2024, Plaintiff filed a Complaint in *Britten v. Illinois Department of Corrections*, case No. 24-1256 (C.D. Ill) (Doc. 1). In February 2025, the Court dismissed Plaintiff's pleading, noting that "the allegations including the specific facts alleged, Defendants named, and claims identified are virtually identical to those in a prior suit filed by Plaintiff in this District: 24-cv-1047-JES, *Britten v. Illinois Department of Corrections, et al*." which was then pending. (*Id*. at Doc. 14.)

II.     **Screening Standard**

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if

it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. Upon reviewing the complaint, the Court accepts the factual allegations as accurate, construing them liberally in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### III. Factual Allegations

Plaintiff's pleading concerns violations at Pontiac Correctional Center ("Pontiac") allegedly committed by the following officials and institutions: Dr. Rodney Alford, Corrections Officers Estes, Faye, Gish, Newberry, Smelts, Thomas, and Vanhulst; Corrections Lieutenant Eusey; Chief Mental Health Director Dr. Melvin Hinton; Mental Health Supervisory Staff members Matthew Goodwin and Howell; Illinois Department of Corrections ("IDOC") Director Latoya Hughes; Nurse Jade; Mental Health Supervisor Paul; Counselor Rivett; the IDOC Administrative Review Board ("ARB"), and the IDOC.

Plaintiff explains that because mental health professionals diagnosed him with "cognitive thinking errors" and "significant functioning impairment," he was housed in the South Mental Health Residential Treatment Unit ("RTU") / Behavioral Management Unit ("BMU") at Pontiac. (Pl. Compl., Doc. 1 at 7.) While there, Plaintiff asserts that his oral and written complaints directed to Defendants Goodwin, Hinton, Howell, Hughes, Newberry, and Paul of "unethical occurrences" that exposed Plaintiff to staff assaults,

denial of medical and mental health care, and the basic human necessity to feel safe" were ignored. (*Id.*)

When Plaintiff asked Defendant Gish to contact internal affairs, Gish responded that internal affairs would not speak with Plaintiff until he was no longer on crisis watch status, which Plaintiff had been for more than fifty days. Gish then refused to report what he characterized as an "unethical" requirement that he be removed from crisis watch before being allowed to speak with internal affairs. (*Id.*)

Plaintiff claims that without an "adequate avenue" to report employee misconduct, he filed grievances, which Plaintiff asserts Defendant Rivett refused to process, expressing doubt as to authorship, despite Plaintiff confirming that he wrote the grievances. (*Id.* at 7-8.) In this regard, Plaintiff claims that Rivett's refusal resulted in his continued exposure to "discriminatory care." (*Id.* at 8.) Plaintiff then refers to specific grievances that he does not attach to his pleading, claiming that they include facts that describe "Defendant Smelts acts of excessive force on [P]laintiff … while receiving medical attention for injuries associated with self-harm." (*Id.*)

In this regard, Plaintiff explains that on an unidentified date, he inserted an object into his urethra, ingested a "load" of asserted pills, and swallowed a shard of fiberglass attached to a string that was protruding from his mouth. (*Id.* at 9.) Plaintiff recalls that Defendant Alford, with the assistance of Defendant Jade, attempted unsuccessfully for about ten minutes to extract the material from his urethra by using forceps, which caused Plaintiff to experience pain. After Alford announced he was taking a break, Defendant Smelts "aggressively stated, 'No, we are not doing this now!'" (*Id.*) Smelts then "forcefully

Page **4** of **10**

smashed" Plaintiff's hand using the palm of his hand and continued to hold Plaintiff's hand in that position. Alford then stopped his extraction attempt after Plaintiff insisted and left the examination room. Plaintiff claims that Defendant Estes stood by silently observing. (*Id*. at 10.)

Defendant Smelts then ordered Plaintiff to sit in a wheelchair. However, before Plaintiff complied, Smelts snatched the string that was hanging out of Plaintiff's mouth, which was attached to the fiberglass shard. Plaintiff immediately felt a burning sensation. Smelts then placed his fingers in the "collar of his shoulder blade" and pushed Plaintiff forcefully down. Plaintiff claims that Defendant Eusey "assisted in the excessive force." (*Id*. at 10.) Plaintiff asserts she was knocked unconscious as a result, and after being awakened by rubbing on his chest, Plaintiff observed Defendants Eusey, Faye, and Thomas present.

## IV.  Analysis

To be deliberately indifferent, a medical professional's decision must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).

Plaintiff does not state a claim against Defendant Alford. Plaintiff's account establishes that Alford attempted to extract the foreign object Plaintiff inserted into his urethra for about ten minutes before Plaintiff requested that Alford stop his attempts. Plaintiff does not provide any further facts that establish or permit the inference that

Alford's medical decision to attempt extraction is a substantial departure from accepted medical judgment. Additionally, Plaintiff does not state a claim against Defendant Jade for merely assisting Alford and deferring to his judgment under the circumstances presented. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.").

Plaintiff asserts that Defendants Goodwin, Hinton, Howell, Hughes, and Paul are liable for the failure to supervise." (Doc. 1 at 13.) However, "[w]ithout a showing of direct responsibility for the improper action, liability will not lie against a supervisory official." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

Plaintiff claims that Defendants Estes, Gish, Jade, Newberry, and Vanhulst are liable for not reporting "Plaintiff's issues concerning employee misconduct." (Doc. 1 at 13.) However, "[t]he Constitution does not impose a general duty to expose wrongdoing anywhere within a government employee's organization." *Hoffman v. Knoebel*, 894 F.3d 836, 843 (7th Cir. 2018). Even if such a duty existed, Plaintiff does not identify which Defendants participated in the alleged misconduct, the circumstances of each claim, the dates when these incidents occurred, or otherwise link any particular Defendant to a particular injury. For example, Plaintiff claims that Gish failed to contact internal affairs about unethical occurrences that exposed Plaintiff to staff assaults, denial of medical and

mental health care, and the basic human necessity to feel safe. Similarly, Plaintiff states only that he observed Defendants Eusey, Faye, and Thomas, who were members of a tactical team, after regaining consciousness, which does not state a plausible constitutional violation.

Plaintiff's assertion that Defendant Rivett refused to process his grievances also fails to state a constitutional violation. "Longstanding precedent has established that prison inmates do not have a constitutional right to an effective grievance procedure or to have prison officials comply with their own grievance process. *Vilayhong v. Billington*, No. 24-01683, 2024 WL 5119133, *2 (S.D. Ill. Dec. 6, 2024) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). "The Constitution requires no procedure at all, thus the failure of prison officials to follow their own grievance procedures does not, standing alone, violate the Constitution. Thus, the mishandling of a prisoner's grievance, failure to investigate a grievance, or misconduct related to the grievance procedure, will not support a constitutional claim." *Id*. (internal citations omitted).

Section 1983 permits an individual to sue a person who deprives that individual of his federally guaranteed rights under color of state law. *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014). "State agencies are not 'persons' under § 1983 . . . ." *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2006); *see also Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 764 (7th Cir. 2013). Thus, Plaintiff fails to state a claim against Defendants ARB and IDOC.

In an excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

Plaintiff's account is sufficient to state an Eighth Amendment excessive force claim against Defendant Smelts and a failure to intervene claim against Defendant Estes. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (concluding that to succeed on a claim for failure to intervene, a plaintiff must demonstrate that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it"). However, Plaintiff does not state a claim against Defendant Eusey based on Plaintiff's conclusory assertion that Eusey "assisted in the excessive force." (Doc. 1 at 10.)

With the entry of the Court's Order, Plaintiff's Motion for Status (Doc. 9) is moot.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Status (Doc. 9) is MOOT.**

2) **According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff states an Eighth Amendment excessive force claim against Defendant Smelts and an Eighth Amendment failure to intervene claim against Defendant Estes. Plaintiff's claim against Defendants proceeds in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

3) **The Clerk of the Court is DIRECTED to terminate Dr. Rodney Alford, Corrections Officers Faye, Gish, Newberry, Thomas, and Vanhulst; Corrections Lieutenant Eusey; Chief Mental Health Director Dr. Melvin Hinton; Mental**

    Health Supervisory Staff members Matthew Goodwin and Howell; IDOC Director Latoya Hughes; Nurse Jade; Mental Health Supervisor Paul; Counselor Rivett; the ARB and IDOC.

4) This case is now in the process of service. The Court recommends that Plaintiff wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendants have not filed their respective Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

6) If a defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be kept only by the Clerk and shall not be kept in the public docket nor disclosed by the Clerk.

7) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses proper under the Federal Rules. The Answer and later pleadings shall be to the issues and claims stated in this Order. An answer sets forth the Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Court. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel files an appearance and the Court enters a scheduling order, which will

provide more detailed information about the discovery process.

9) Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

11) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

12) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

13) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED March 3, 2026.

s/ *Colleen R. Lawless*

---
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE